Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 293 | DATE | 4/14/2003 |
| CASE TITLE | Velazquez vs. Homeamerican Credit, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached order, the Court denies HomeAmerican's motion to dismiss (4-1) and for sanctions (4-2). HomeAmerican is directed to answer the complaint within ten days of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 2 1 2003 date docketed | |
| | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | 03 APR 19 AM 11:48 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 2 1 2003

MONICA VELAZQUEZ, )
)
Plaintiff, )
) Case No. 03 C 293
v. )
)
HOMEAMERICAN CREDIT, INC., )
d/b/a UPLAND MORTGAGE, )
)
Defendant. )

## AMENDED MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In June 2000, HomeAmerican Credit, Inc., doing business as Upland Mortgage, solicited Monica Velazquez to refinance her home mortgage. Velazquez agreed, and representatives of Upland came to her home to close the deal. The loan documents were dated June 15, 2000, but Velazquez alleges that she actually signed the documents on some other date. She further alleges that at the time of the closing, Upland failed to give her copies of the documents; she alleges that she received copies of the Truth In Lending disclosures, the settlement statement and the notice of her right to rescind via Federal Express several weeks later.

On December 6, 2002, Velazquez, through her attorney, notified Upland that she was electing to rescind the loan agreement. On December 16, 2002, Upland responded, asking Velazquez to clarify the reason for the rescission. Velazquez' attorney responded the next day, explaining that the manner in which the loan transaction closed violated the Truth In Lending Act because Upland failed to give her, at the time of the transaction, copies of the material

10

disclosures and a copy of the notice of her right to cancel. That same day, Upland notified Velazquez that although it disagreed with her contention that it had violated the TILA, it was nonetheless agreeing to rescind Velazquez' loan transaction. Upland's letter stated that it "has initiated the rescission process. You will receive a letter shortly containing an itemized statement of the rescission amount, Upland will release its mortgage simultaneously with, or otherwise upon receipt of, payment of the rescission amount." Complaint, Exhibit F.

On January 10, 2003, having heard nothing more from Upland and having never received a statement of the rescission amount, Velazquez' attorney notified Upland that she intended "to promptly file suit." *Id.*, Exhibit G. Velazquez filed her complaint on January 14, 2003, alleging that Upland violated the TILA and failed to rescind the loan transaction. In addition to a declaratory judgment concerning the rescission, Velazquez seeks statutory damages, attorney's fees, litigation expenses and costs. Upland has moved to dismiss the complaint, arguing that because it agreed to rescind the transaction on December 17, there is no case or controversy.

The Truth In Lending Act gives a consumer the absolute right to rescind a credit transaction simply by notifying the creditor, within a specific period of time, that she intends to do so. *See* 15 U.S.C. §1635. Rescission is available for three business days following the finalization of the transaction, and, if the creditor fails to make all material disclosures, including disclosure of the right to rescind, the consumer's ability to rescind may be extended for up to three years. 15 U.S.C. §1635(a); *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1139 & n.5 (11th Cir. 1992). The statute requires that "within 20 days after the receipt of a notice of rescission, the creditor shall return to the obligor any money or property given . . . and shall take any action necessary or appropriate to reflect the termination of any security interest created

2

under the transaction." 15 U.S.C. §1635(b). The regulations implementing the TILA, generally known as Regulation Z, are even more rigid, stating that "[w]ithin 20 calendar says after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest." 12 C.F.R. §226.23. This section does not permit the creditor to retain its security interest, or to withhold money or property, pending the consumer's return of what she received under the agreement. In fact, the statute and the regulations are explicit that the consumer need not return money or property to the creditor until *after* the creditor has fulfilled its obligations under the statute. 15 U.S.C. §1635(b); 12 C.F.R. §226.23(d)(3).

Though the statute is clear on its face, the scheme created thereby is arguably inequitable, and it is tempting at first blush to assume that this cannot really have been what Congress intended. If the point of rescission is to return the parties to where they would have been had the transaction never occurred, it is questionable whether it makes sense to require the creditor to give up its security interest without requiring the consumer to at least simultaneously tender the money or property she acquired in the transaction. A scheme that requires the creditor to act first by canceling its security interest without assurance that the consumer will do her part risks leaving the creditor high and dry, an unsecured creditor forced to rely on the consumer's good graces and ability to tender. Indeed, as the Eleventh Circuit explained in *Williams*, TILA's scheme is contrary to the rule under common law rescission, where the rescinding party must tender first. *See Williams*, 968 F.2d at 1140 (citing 17A Am. Jur. 2d *Contracts* §590, at 600-01 (1991)). But when read in the context of the statute as a whole, the purpose of which is to protect

the consumer, 15 U.S.C. §1601(a), it is clear that this is exactly what Congress intended. The point of giving the consumer an absolute right to rescind is to "'place[] the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission.'" and to "insure[] creditor compliance with TILA's disclosure requirements." *Williams*, 968 F.2d at 1140 (quoting Note, *Truth-In-Lending: Judicial Modification of the Right of Rescission*, 1974 Duke L.J. 1227, 1234 (1974)). *See also Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 55-56 (1st Cir. 2002) ("Rescission under the TILA is 'automatic' in the sense that, in contrast to common law rescission, the borrower need not first return the loan proceeds received under the agreement to effect a rescission"; this puts the consumer "in a stronger bargaining position."). These goals are furthered by making rescission as painless – and cheap – as possible for the consumer. The Supreme Court has specifically instructed that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there"; in statutory interpretation cases, once the court is satisfied that the statutory language is unambiguous and the statutory scheme is coherent and consistent, judicial inquiry is complete. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 461-62 (2002). *See also Krzalic v. Republic Title Co.*, 314 F.3d 875, 879-80 (7th Cir. 2002). Upland has cited nothing in the statute, the regulations, the Official Staff Interpretation or the legislative history indicating that Congress did not mean exactly what it said when it drafted §1635. And, given that the plain language appears to be consistent with the purpose of the statute, we defer to that language.

Having determined that the statute requires a creditor to take certain steps once a consumer elects to rescind the transaction, we must ask whether Upland took those steps. Upland has moved to dismiss for lack of standing based on its pre-suit offer to rescind the

4

transaction. For Velazquez to have standing to sue, she must be able to show that she suffered an injury, that defendant's conduct caused that injury, and that her injury is likely to be redressed by a decision in her favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-41, n. 16 (1972); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42, 43 (1976)). Upland takes issue with the last point, arguing that because it already offered to rescind the transaction, Velazquez has nothing to gain through this suit. But that is only true if Upland's actions satisfied what was required under the rescission provisions of TILA and the governing regulations. As explained, those provisions require a creditor, within twenty days after receipt of a notice of rescission, to return any money or property given and to "take any action necessary to reflect the termination of the security interest." 12 C.F.R. §226.23(d)(2); 15 U.S.C. §1635(b). Neither the statute nor the regulation explains what action is "necessary" or what exactly the creditor is required to do. The Official Staff Interpretation of this section sheds some light: after reciting the rule that the creditor "must take whatever steps are necessary to indicate that the security interest is terminated," it states that such steps "include the cancellation of documents creating the security interest and the filing of release or termination statements in the public record." 12 C.F.R. Part 226, Supp. I. The interpretation states that "the process" – presumably the process of terminating the security interest, though the staff was not clear on the issue – need not be completed within the twenty-day period, but it states that "the creditor is responsible for seeing the process through to completion." *Id.*

According to Velazquez' complaint, the allegations of which we take to be true at this

5

point, *see Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001), as of the time she filed this lawsuit, the only step Upland had taken to fulfill its obligations under §1635 was to say that it "initiated the rescission process." Although the twenty-day period had come and gone, Upland apparently had taken no steps toward releasing its interest in her property; it had done nothing to further the rescission process and done nothing to suggest that it had any intention to see the rescission process through to completion. On the contrary, Upland's words and actions suggested that it would *not* satisfy its obligation under §1635 to release its mortgage, unless and until Velazquez paid the rescission amount.

In *Personius v. HomeAmerican Credit, Inc.*, 234 F. Supp. 2d 817 (N.D. Ill. 2002), the plaintiffs sued Upland alleging their residential loan transactions violated the TILA; the plaintiffs, like Velazquez, sought rescission, statutory damages and attorney's fees. As here, before suing the plaintiffs wrote to Upland requesting rescission because of its failure to comply with the TILA, and, as here, before seeing the complaint, Upland agreed to rescind the transactions, notifying the plaintiffs that it had "initiated the process necessary to rescind the [loans]" and advising that it would send an itemized statement of the rescission amount. *Id.* at 818. As here, Upland moved to dismiss, arguing that its offer to rescind left the plaintiffs no standing to pursue their claims. The district court agreed and granted the motion. Upland asks us to do the same here.

Two things were different in *Personius*. First, in *Personius*, Upland actually provided the plaintiffs with the promised rescission statements – and it did so promptly, just ten days after that initial letter. *Id.* And, second, in *Personius*, the plaintiffs filed their lawsuit two days after requesting rescission; unlike Velazquez, they did not allow the twenty-day period to run and thus

6

did not give Upland the chance to satisfy its obligations under §1635. We think these distinctions are crucial. Although the Official Staff Interpretation of §226.23 states that the creditor is only required to begin the process within twenty days, it would seem to make sense that if after the twenty days expires, the creditor indicates that it will not comply with the statute the consumer has the right to sue then and there even if the creditor may have "begun" the process. Upland's reading of *Personius*, which essentially says that as long as a creditor says it has initiated the process, it is immune from suit even if it does nothing more, takes the teeth out of the rescission provisions and effectively rewrites the statute. Given Upland's response to her rescission request, and its apparent flouting of the duties imposed on it under the TILA and Regulation Z, Velazquez, unlike the plaintiffs in *Personius*, could legitimately claim that Upland failed to rescind her loan. Perhaps emboldened by its victory in *Personius*, Upland behaved differently with Velazquez: it blatantly conditioned its performance on Velazquez' return of the money, something it plainly is not permitted to do under the law. Under the circumstances, we are persuaded that a case or controversy exists here and that Velazquez has standing to pursue her claim.

Having said all of this, we note that our ruling today does not mean that Upland has no right to the return of the loan proceeds. TILA allows the rescission procedures contained therein – including the provisions fixing the order of performance – to be modified *by court order*. 15 U.S.C. §1635(b); 12 C.F.R. §226.23(d)(4). And, ultimately, even if we conclude that Velazquez had the right to rescind when she did – something we assume to be true at this point – equity may require that we order Velazquez to return the money simultaneous with Upland's release of its security interest. But neither the statute nor the regulations permit a creditor unilaterally to

7

impose its will upon the process, which is essentially what Upland tried to do by making Velazquez pay before it rescinded the loan. This is particularly true where, as appears to be the case here, the consumer has given the creditor no indication that she cannot or will not tender the money after the creditor performs.[1]

Upland also argues that Velazquez' claim for statutory damages is time-barred. Again, we disagree. The statute of limitations provides that the action must be brought within one year from the date of the occurrence of the violation. 15 U.S.C. §1640(e). As we read the complaint, Velazquez' claim is based not on the failure to provide the requisite documents and disclosures at the closing, but on Upland's failure to rescind, which could not have occurred until after Velazquez made her election in December 2002. Thus, Velazquez' claim, filed the next month, was well within the statute of limitations period.

Finally, we address Upland's motion for sanctions. Upland argues that, in light of the court's decision in *Personius*, Velazquez' complaint is frivolous and her refusal to dismiss her complaint sanctionable. Given our findings above, we disagree.

## Conclusion

For the reasons explained above, the Court denies HomeAmerican's motion to dismiss [Docket # 4-1] and for sanctions [Docket #4-2]. HomeAmerican is directed to answer the complaint within ten days of this Order. The case is set for a status hearing on April 15, 2003 at

---

[1] Upland does not argue that Velazquez lacked the right to rescind under TILA. Obviously a debtor who lacks the legal right to rescind cannot construct a TILA violation from the creditor's failure to honor the debtor's extra-legal rescission demand.

8

9:30 a.m. for the purpose of setting a discovery schedule and discussing the prospect of settlement.

Date:  April 14, 2003

                                      MATTHEW F. KENNELLY
                                      United States District Judge